Earle, J.,
delivered tbe opinion of tbe Court.
The main question presented by the motion for a nonsuit, is, whether in an action by the auctioneer himself, to recover the price of the property sold, or the difference between a first and second sale, and the ordinance for regulating public vendues, the entry made by him in his book in pursuance of of the statute, is in compliance with the statute of frauds, requiring a memorandum in writing. That sales at auction are within the statute, and require a memorandum in writing, is well settled, both here and in England. It was so decided here, in Davis vs. Roberts, 1 Con. Rep., 71, which was by the former owner against the purchaser. But it was likewise held that the entry of the auctioneer, being the agent of both parties, in compliance with the statute, and that the original must be produced. It is supposed that a different rule should *145 prevail, wben the action is in the name of the auctioneer and I was at first struck with the plausibility of the reasoning to sustain that view. But an examination of the Act, and a consideration of its general scope and tendency, have led me to a different conclusion. The Act provides for the appointment of vendue masters, who are required to give bond to the commissioners of the treasury, and to take an oath and obtain a license, before they can carry on the business of selling at vendue. They are also “obliged and required to keep a book, wherein shall be fairly written and entered, all ships, boats, and other vessels, lands, bouses, slaves, negroes, cattle, goods, wares, and merchandize, by them sold and disposed of, either at public outcry, or by private sale, to whom and at what prices the same were sold.” And although the latter part of the same section which requires the said “book or books to be laid before the commissioners of the treasury for the time being, for the duties due the State at every time of settlement,” might raise a doubt whether that was not the only purpose of requiring such entries, yet a further examination of other sections will show that the entries must be regarded as legal, and sufficient evidence of the sale, in'.controversies arising between the parties. The vendue masters are authorized by the 4th section, to recover, in the most summary way, the amount of their cash sales from the purchasers; and by the 10th section it is enacted, that if any person shall purchase any lands, slaves, houses, &c., at any public sale, “and which purchase shall be entered in the books of the vendue master so selling such property,” the person so refusing to comply with the conditions of the sale, within seven days thereafter, shall be liable for all losses arising thereon, to the owner— and the vendue master is authorized to re-sell after notice, and to recover the deficiency at the first ensuing Court, from the person refusing to comply. When this case came up here the last time, it was ruled that the auctioneer, being plaintiff" was not a competent witness to prove the entries in his book, without indicating what would be competent and legal evidence. In England, as well as here, the auctioneer is considered the agent of both parties — and in a suit between them, his entry proved by himself, would be regarded as sufficient. But a case is cited from 5 Barn. & Ald. 333, where, in an *146 action by the auctioneer himself, it was held that his book of entries was not sufficient, and that the agent contemplated by the statute of frauds, who is to bind another by his signature, must be some third person, and not the other contracting party. But then I am not aware of any statute regulating sales at auction requiring such entries to be made in a book, to be kept for that purpose; and although at common law the auctioneer might sue in his own name, both for the price and the difference between a first and second sale, both there and here, yet he would not be obliged to produce his entry of the sale, but might recover on other evidence, in writing, of the contract. But here the Act requires him to make an entry of the article sold, the person to whom sold, and the amount of sale — and when he sues, to recover the difference between the first and second sale, made in pursuance of the statute, he must show that the purchase has been entered in his books. It cannot be supposed, that the legislature could have intended to make that an indispensable part of his proof, and yet that it should not be sufficient. Being the plaintiff on the record, he is not a competent witness to prove it; but it is the entry which constitutes the evidence, and not his testimony. He is to show that it is a genuine and authentic document, and no more — and the Court is of opinion that he has done so.
The grounds taken for a new trial, arise out of a misconception of the case. Parol evidence was not admitted to establish a condition of the sale not stated in the auctioneer’s entry, but only to show that the negro was sold as unsound. The entry does not state that she was sold as sound. On such a sale, without proof to the contrary, the law would raise an implied warranty of soundness — even an express warranty of title would not exclude the implied warranty of soundness; Wills vs. Spears, and Banks vs. Hughes, 1 McCord, 421, 537. Surely where there is no written warranty of soundness, it is competent to rebut the implied warranty, by proof that there was an express refusal to warrant, and that the property was sold as unsound. The proof is clear that the disease of the negro was made known at the sale, and the defendant cannot complain if she turned out less valuable than he expected.
The motion for nonsuit, as well as for new trial is refused.